AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| United States of America<br>v.<br><br>ROGER MERCEDES<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)    17-215 M<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 9, 2017__ in the county of __New Castle__ in the
_____ District of __Delaware__ , the defendant(s) violated:

*Code Section* | *Offense Description*
--- | ---
21 U.S.C. § 841(a)(1), (b)(1)(C), & 846 | Conspiracy to possess with intent to distribute cocaine

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Paul Lawrence, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Nov. 10, 2017

_____
Judge's signature

City and state:  Wilmington, Delaware        Hon. Sherry R. Fallon, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Paul W. Lawrence, Task Force Officer ("TFO") of the Drug Enforcement Administration ("DEA"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of a State who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been assigned as a DEA TFO with the Wilmington, Delaware Resident Office ("WRO") since August 2013. I am presently a Detective with the Newark, Delaware Police Department Special Investigations Unit (August 2013 – Present). Prior to joining the WRO, I served as a Patrol Officer with the Newark, Delaware Police Department (March 2011 – August 2013).

3. During my employment as a law enforcement officer, I have received training in connection with the identification, manufacture and distribution techniques of illegal drugs, including heroin, cocaine, and methamphetamine. I have attended several schools and seminars that specialized in all aspects of narcotics investigations, including the following: 1) Cultivation and Management of Confidential Informants; 2) General Narcotics Investigation; and 3) Electronic Surveillance Techniques.

4. In my time as a law enforcement officer, I have received various awards and letters of commendation, including, but not limited to, the Newark Police Department Officer of the Year (2012-2013), and a Citation of Merit for a heroin distribution investigation spanning the Philadelphia, Pennsylvania and Newark, Delaware areas.

5.  During my employment as a DEA TFO, I have personally participated in over 50 narcotics investigations, including four wiretap investigations (one in the State of Delaware and three in the United States District Court for the District of Delaware ("District of Delaware"). Two of those wiretap investigations have involved drug traffickers who mostly spoke Spanish. I also continue to keep abreast of current trends and practices of drug traffickers by reading periodicals, intelligence reports and training literature. I also have daily contact with other Special Agents/TFOs and law enforcement personnel as well as confidential informants and sources of information in order to remain up-to-date with current trends of narcotics traffickers.

6.  During my time as a law enforcement officer, I have personally interviewed in excess of one hundred (100) drug users, and have interviewed or witnessed the interview of in excess of fifty (50) drug dealers. The drugs involved in the majority of these interviews were cocaine, heroin, and marijuana. These interviews continue to allow me to remain up-to-date about how illegal drugs are used, packaged, transported, secreted, and sold, and the common coded language that drug dealers and their customers use to conduct transactions.

7.  Through training and participation in investigations, I have become familiar with the manner and methods by which narcotics traffickers conduct their illegal business and common the language and terms that are used to disguise conversations about their narcotics activities. Your affiant also recognizes that narcotics traffickers utilize cellular telephones and/or portable cellular telephones to conduct drug activity, and that they frequently change their cellular devices and/or cellular telephone numbers to avoid law enforcement detection.

8.  I submit this affidavit in support of an application for a Criminal Complaint against the following individuals: ROGER MERCEDES ("MERCEDES"), KEITH LENDHOF

("LENDHOF"), RED PICHARDO ("PICHARDO") and ANGEL CESAR ("CESAR") (referred to together as the "Defendants").

9. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the Drug Enforcement Administration and other law enforcement agencies; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

10. Probable cause exists to believe that the Defendants have committed the offense of conspiracy to possess with intent to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846.

## FACTS ESTABLISHING PROBABLE CAUSE

11. On August 22, 2017, your affiant and Resident Agent in Charge David Hughes met with a DEA confidential source of information, hereafter referred to as "CS", regarding the cocaine trafficking activities of Roger MERCEDES (hereinafter "MERCEDES").[1] The CS advised that he/she met MERCEDES at a Hotel in Orlando, Florida, while working as an Uber Black driver. The CS advised that during the course of their interaction, MERCEDES began discussing the distribution of cocaine with the CS. The CS detailed that MERCEDES informed the CS that he was able to obtain multi-kilogram quantities of cocaine. The CS advised that after speaking with MERCEDES for approximately thirty (30) minutes, MERCEDES took the CS to a Cadillac Escalade parked in the parking lot of a hotel. Once at the vehicle, MERCEDES activated/opened a hidden compartment within the vehicle, which, the CS advised, contained approximately ten (10) kilograms of cocaine. The CS stated that MERCEDES advised the price per kilogram of cocaine was approximately $23,000.00 United States Currency (USC). The CS provided TFO Lawrence and RAC Hughes with cellular telephone numbers 858-257-9597 (the "MERCEDES PHONE") and 201-580-6899 as belonging to and being utilized by MERCEDES. MERCEDES informed the CS that he resides in the Pittsburgh, Pennsylvania, area and coordinates the distribution of kilogram quantities of cocaine throughout the Pennsylvania, Delaware, and Maryland areas.

12. On November 8, 2017, the CS placed a recorded phone call to MERCEDES at the MERCEDES PHONE. During that phone call, MERCEDES stated that a shipment of cocaine was ready to be delivered to the CS. MERCEDES stated that the CS could pay for 5 kilograms of cocaine and obtain another 3 kilograms on loan, for a total of 8 kilograms. They agreed on a

---

[1] The CS fully identified MERCEDES through a photograph taken from a law enforcement database and later from MERCEDES'S identification post-arrest. A further search of law enforcement databases revealed that in 2012, MERCEDES was arrested on I-95 by the Maryland State Police. During the traffic stop, MERCEDES was arrested

price of $137,500 for the 5 kilograms of cocaine. Also during that call, MERCEDES stated that he would deliver the cocaine to the CS in Delaware.

13. In the morning of November 9, 2017, the CS placed several recorded calls to MERCEDES. The CS sent MERCEDES an address at which to deliver the cocaine. The parties agreed that the cocaine was to be delivered to the CS later that day in the parking lot of the Embassy Suites at 654 S. College Avenue, Newark, DE.

14. At 2:40 P.M. MERCEDES placed a call to the CS and stated that he was 1-hour away from the agreed upon meeting location in Delaware. At 3:47 P.M., the CS received an incoming call from MERCEDES that he was twenty minutes away and that MERCEDES was waiting for another car to catch up with him. At 4:16 P.M. MERCEDES called the CS and stated to the CS that he was at the McDonald's in Newark, Delaware.

15. At 4:25 P.M. your affiant observed a BMW M3 bearing New Jersey registration B73 HZD (the "BMW") enter the agreed-upon location where the cocaine transfer was to take place. Your affiant observed the BMW drive around the parking lot until it parked in the rear parking lot of the Homewood Suites at 640 S. College Avenue in Newark, DE. The Homewood Suites is directly adjacent to the Embassy Suites hotel at 654 S. College Avenue in Newark, DE.

16. At this point in time, the CS was standing on the outside of his car in the parking of the Embassy Suites waiting for MERCEDES.

17. While the CS was standing by his car, your affiant observed MERCEDES, and two other Hispanic males later identified as LENDHOF and CESAR exit the vehicle. LENDHOF and MERCEDES walked toward the location where the CS was standing. As they were walking, your affiant observed LENDHOF and MERCEDES looking into the windows of

---

for the possession of approximately three (3) kilograms of cocaine.

vehicles in the parking lot as they walked toward the location of the CS. In your affiant's training and experience this conduct is consistent with conducting counter-surveillance to detect the presence of law enforcement and/or someone trying to rob the Defendants at the location of the drug deal (hereinafter "counter-surveillance").

18. Your affiant observed CESAR enter the driver's seat of the BMW and circle the rear parking lot connecting the Embassy Suites and the Homewood Suites. Your affiant observed CESAR looking into vehicles parked in the parking lot, also conducting what appeared to your affiant to be counter-surveillance.

19. After MERCEDES and LENDHOF approached the location of the CS in the parking lot, your affiant observed CESAR drive the BMW toward the location of the CS. At that point, MERCEDES, LENDHOF and the CS converged where CESAR had parked the BMW in the parking lot of the Embassy Suites, which was in the general vicinity of the CS's original location.

20. The CS was wearing an audio recording device, which your affiant was able to listen to in real-time. Your affiant listened as the CS, MERCEDES, LENDHOF, and CESAR greeted each other in Spanish. As the three males were speaking with each other, your affiant observed LENDHOF continue to walk around and look into vehicles parked in the area immediately surrounding the meeting point. During the course of the conversation, your affiant heard MERCEDES tell the CS that he had brought "seven" with him (this statement was in English). Your affiant understood this to mean that MERCEDES had arranged to bring 7 kilograms of cocaine with him, instead of the originally agreed upon 8 kilograms. Your affiant also understood that the 7 kilograms of cocaine would be located in another vehicle, given MERCEDES'S prior statement to the CS that he was bringing two vehicles to the arranged deal.

In your affiant's training and experience it is typical for drug traffickers, especially those trafficking in large quantities of controlled substances, to utilize multiple vehicles during drug deliveries. This tactic is utilized so that if law enforcement searches the vehicle in which the drug trafficker is travelling, it will not contain any controlled substances. In addition, this allows drug dealers to surveil the location of potential drug transactions in person before calling in another vehicle that actually contains the controlled substances.

21. While the CS continued to speak with MERCEDES, LENDHOF left the conversation and entered the lobby of the Embassy Suites. LENDHOF was observed continuing to look around in various directions as he walked. In your affiant's training and experience, LENDHOF was continuing to conduct counter-surveillance.

22. At 4:35 P.M., while MERCEDES and the CS continued to speak mostly in Spanish, CESAR drove the BMW into the parking lot of another adjacent hotel, the Baymont Inn & Suites at 630 S. College Avenue, Newark, Delaware. CESAR was observed by law enforcement as he parked the BMW immediately next to a Ford Explorer bearing Virginia registration VVX 3657 (the "Explorer"). Another Hispanic male, later identified as PICHARDO, was in the driver's seat of the Explorer. CESAR was then observed exiting the BMW and opening the rear driver's side door of the Explorer. CESAR was seen manipulating an object in the rear passenger seat of the Explorer while the door to the car remained open. CESAR stayed at the rear passenger door of the Explorer for approximately ten minutes while the door remained open.

23. While CESAR was manipulating an object in the rear of the Explorer, MERCEDES and the CS continued to speak in Spanish. During this period, LENDHOF walked from the area of the Embassy Suites to the parking lot of the Baymont Inn & Suites toward the

area where the BMW and Ford Explorer were parked side-by-side. As he walked, LENDHOF continued to look into car windows as he walked, again consistent with counter-surveillance.

24. As LENDHOF was walking in the direction of the Baymont Inn & Suites, he walked immediately in front of a Dodge Grand Caravan minivan, which was occupied by three law enforcement officers participating in this investigation. LENDHOF peered into the front windshield of the minivan and looked directly at a law enforcement officer sitting in the front passenger seat of the minivan. At that point, LENDHOF picked up his cellular telephone and appeared to make a phone call. At the same moment, CESAR also picked up his mobile phone as if he was receiving a phone call.

25. CESAR was then observed hurriedly exiting the Ford Explorer and making his way back to the BMW. CESAR then drove the BMW at a high-rate of speed in the direction of LENDHOF and picked him up. At the same time, PICHARDO, who had remained in the driver's seat of the Ford Explorer the entire time, also drove out of the Baymont Inn & Suites parking lot at a high-rate of speed and turned onto S. College Avenue. At that point, law enforcement conducted a traffic stop on the Ford Explorer. Inside the Ford Explorer, law enforcement discovered a suitcase on the rear passenger seat. Inside the suitcase was 7 kilograms of a white powdery substance that later field-tested positive for the presence of cocaine.

26. During the time PICHARDO drove away in the Ford Explorer, the car with LENDHOF and CESAR headed in the direction of MERCEDES, who was still talking with the CS. After MERCEDES reentered the BMW, they were stopped by law enforcement in the parking lot and taken into custody.

27. In your affiant's opinion, the actions of the Defendants—including but not limited to (1) greeting the CS together while having the drugs stored in another vehicle; (2) conducting

counter surveillance; and (3) attempting to leave the transaction at the same time—show that they were working in concert to conduct their criminal activity on November 9, 2017.

_____
TASK FORCE OFFICER PAUL W. LAWRENCE
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
10th day of November, 2017

_____
THE HONORABLE SHERRY R. FALLON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF DELAWARE